# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

STACEY D. BERRY,                          )
                                          )
               Petitioner,          )
                                          )
v.                                        )          **Case No. 19-CV-0706-GKF-FHM**
                                          )
JEORLD BRAGGS, JR.,                       )
                                          )
               Respondent.          )

## OPINION AND ORDER

Petitioner Stacey Berry, a state inmate appearing through counsel, commenced this action on December 24, 2019, by filing a 28 U.S.C. § 2254 petition for writ of habeas corpus (Dkt. 1). Petitioner seeks federal habeas relief from the state-court judgment entered against him in the District Court of Craig County, Case No. CF-2014-36. Before the Court are three motions: respondent's motion (Dkt. 8) to dismiss the petition as barred by the applicable one-year statute of limitations, petitioner's motion (Dkt. 15) for hearing and oral argument on the dismissal motion, and petitioner's motion (Dkt. 20) to strike the dismissal motion and order his immediate release. For the reasons discussed below, the Court denies petitioner's motions, grants respondent's motion, and dismisses the petition for writ of habeas corpus, with prejudice, as barred by 28 U.S.C. § 2244(d)(1)'s one-year statute of limitations.

## *BACKGROUND*

In March 2010 the Department of Health Services (DHS) investigated allegations that petitioner had sexually abused one or more of his daughters. Dkt. 9-2, Dist. Ct. Order (Apr. 10,

2018), at 1.[1]  As part of the investigation, DHS workers interviewed petitioner, his wife, and his daughters, all of whom denied the allegations.  Dkt. 9-2, Dist. Ct. Order, at 1; Dkt. 3, Pet'r's Ex. A, at 2.  Following the investigation, the DHS issued a "Report to District Attorney" indicating that the DHS had "ruled out" sexual abuse and did not request that petitioner's daughters be removed from the home.  Dkt. 3, Pet'r's Ex. A, at 2.  Petitioner was aware of the investigation and findings because he participated in the investigation.  Dkt. 9-2, Dist. Ct. Order, at 1.

Petitioner, his wife, and his daughters "had a family meeting on May 20, 2013, lasting in to May 21, 2013, during which [petitioner] confessed" that he sexually abused one of his daughters.  Dkt. 9-2, Dist. Ct. Order, at 1.  Petitioner's wife reported the abuse to the Craig County Sheriff on May 28, 2013, and the State filed criminal charges against petitioner on April 11, 2014, alleging petitioner abused three of his four daughters.  *Id.*; Dkt. 3, Pet'r's Ex. C, at 23-24.  In January 2014, several months before the State filed criminal charges, petitioner's attorney, Leonard Logan, received a copy of the report issued by the DHS following its 2010 investigation.  Dkt. 9-2, Dist. Ct. Order, at 1.  At that time, Logan was representing petitioner in a divorce proceeding.  Dkt. 3, Pet'r's Ex. B, at 20.

On November 16, 2015, petitioner, represented by Logan in his criminal proceeding, entered blind pleas of guilty and no contest to four counts of child sexual abuse and one count of sexual battery.  Dkt. 9-1, Craig Cty. Docket Sheet, at 2; Dkt. 9-2, Dist. Ct. Order, at 2; Dkt. 9-6, *Berry v. State*, No. PC-2018-863 (Okla. Crim. App. Jan. 30, 2019) ("OCCA Order"), at 1.  The trial court sentenced petitioner on January 11, 2016.  Dkt. 9-2, Dist. Ct. Order, at 2.  Petitioner did

---

[1] The state district court made several factual findings during state postconviction proceedings.  Dkt. 9-2, Dist. Ct. Order (Apr. 10, 2018).  Under 28 U.S.C. § 2254(e)(1), the Court presumes these facts are correct because petitioner has not rebutted that presumption with any clear and convincing evidence.

not move to withdraw his guilty pleas within the 10-day period permitted by Oklahoma law nor did he file a timely certiorari appeal to obtain direct review of his convictions or sentences. Dkt. 9-2, Dist. Ct. Order, at 2.

Petitioner, represented by Logan, filed a motion for judicial review of his sentence on August 19, 2016. Dkt. 9-2, Dist. Ct. Order, at 2. In an order filed March 6, 2017, the state district court dismissed the motion, finding it lacked jurisdiction to consider the motion absent the State's consent. *Id.* Wes Johnson, petitioner's postconviction and federal habeas counsel, entered his appearance in petitioner's Craig County case on March 14, 2017. Dkt. 9-2, Dist. Ct. Order, at 2. Represented by Johnson, petitioner filed a mandamus action in the Oklahoma Court of Criminal Appeals (OCCA) on May 16, 2017, seeking an extraordinary writ to prohibit the state district court from enforcing its order denying his motion for judicial review. Dkt. 9-3, *Berry v. McBride*, Case No. MA-2017-503 (Okla. Crim. App. July 11, 2017), at 1. Two days later, on May 18, 2017, petitioner's mother went to Logan's office to obtain letters written to petitioner by his daughters. Dkt. 3, Pet'r's Ex. D, at 25. Petitioner's mother found in Logan's case file "an eighteen page report to the District Attorney for Craig County [regarding a] sex abuse referral [to] the Department of Human Services" indicating that the DHS found no evidence of sexual abuse following its investigation in 2010.[2] *Id.* Petitioner's mother took the DHS report to petitioner at the North Fork Correctional Center some time in July 2017, and petitioner told his mother he had never seen the report. *Id.*; Dkt. 3, Pet'r's Ex. G, at 30.

The OCCA granted petitioner's request for a writ of prohibition on July 11, 2017, and

---

[2] Petitioner describes the 18-page report as comprising a 15-page report generated by the DHS for the District Attorney, dated 10/12/2013 (Dkt. 3, Pet'r's Ex. A), and a 3-page "notification" regarding the results of the investigation, addressed to petitioner and dated October 10, 2015 (Dkt. 3, Pet'r's Ex. A-1). Dkt. 1, Pet., at 18. Hereafter, the Court will refer to petitioner's Exhibits A and A-1, collectively, as the DHS report.

remanded the case to the state district court for further proceedings.  Dkt. 9-3, *Berry v. McBride*, Case No. MA-2017-503 (Okla. Crim. App. July 11, 2017), at 1.  On October 3, 2017, following an evidentiary hearing, the state district court denied petitioner's motion for judicial review.  Dkt. 9-1, Craig Cty. Docket Sheet, at 21-22; Dkt. 9-2, Dist. Ct. Order, at 2.

Represented by Johnson, petitioner filed an application for postconviction relief in state district court on December 29, 2017.  Dkt. 9-1; Craig Cty. Docket Sheet, at 22.  He claimed (1) the trial court lacked jurisdiction over his criminal prosecution, in light of *Murphy v. Royal*, No. 07-7068, August 8, 2017 (10th Cir. 2017), because he is a member of the Cherokee Nation and the crime occurred in Indian country, (2) Logan provided ineffective assistance of counsel by advising petitioner to plead guilty after Logan received the DHS report in January 2014 because, had petitioner known about the DHS report, he could have used that to impeach his daughters' testimony at trial, and (3) the sentencing court improperly ordered restitution.  Dkt. 9-2, Dist. Ct. Order, at 3-4.  The state district court denied relief as to all three claims on April 10, 2018.  *Id.* at 1.  In an order filed June 29, 2018, the OCCA declined to exercise jurisdiction over petitioner's appeal from the denial of postconviction relief, finding that petitioner failed to attach to his petition in error a certified copy of the state district court order, as required by Rule 5.2(C)(2), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2018).  Dkt. 9-4, *Berry v. State*, Case No. PC-2018-618 (Okla. Crim. App. June 29, 2018), at 3.

Petitioner filed a second application for postconviction relief on June 15, 2018, asking the state district court to recommend that he be granted leave to file an out of time postconviction appeal.  Dkt. 9-1, Craig Cty. Docket Sheet, at 24.  The state district court granted that request and, on August 1, 2018, the OCCA granted petitioner leave to file an out-of-time postconviction appeal.  *Id.*; Dkt. 9-5, *Berry v. State*, Case No. PC-2018-756 (Okla. Crim. App. Aug. 1, 2018), at 1.

Petitioner timely perfected the out-of-time postconviction appeal and, by order filed January 30, 2019, the OCCA affirmed the denial of petitioner's first application for postconviction relief. Dkt. 9-6, OCCA Order, at 1.

Represented by Johnson, petitioner filed the instant federal petition for writ of habeas corpus on December 24, 2019. Dkt. 1, Pet., at 1. Petitioner seeks federal habeas relief on the same three claims he presented to the state court through postconviction proceedings: (1) the trial court lacked jurisdiction to prosecute him for major crimes committed by a member of the Cherokee Nation in Indian country, Dkt. 1, Pet., at 9-17, (2) trial counsel provided ineffective assistance by advising petitioner to plead guilty and by failing "to divulge, prepare and present significant exculpatory evidence," namely the DHS report, before petitioner pleaded guilty, *id.* at 18-23, and (3) the trial court improperly ordered restitution, *id.* at 23-24.

In response to the petition, respondent filed a motion to dismiss (Dkt. 8) and brief in support (Dkt. 9), alleging petitioner failed to comply with 28 U.S.C. § 2244(d)(1)'s one-year statute of limitations. Petitioner filed a response (Dkt. 14) opposing the dismissal motion, and respondent filed a reply (Dkt. 16). Petitioner filed a motion (Dkt. 15) requesting a hearing and oral argument on the dismissal motion, and respondent filed a response (Dkt. 17) opposing that motion. Petitioner also filed a motion (Dkt. 20) to strike the dismissal motion and includes in that motion a request for an "order granting writ of habeas with order directing state court to immediately release the petitioner." Respondent filed a response (Dkt. 21) opposing the motion to strike and petitioner's request for immediate release.

## DISCUSSION

The Antiterrorism and Effective Death Penalty Act (AEDPA) establishes a one-year statute of limitations for state prisoners to file federal habeas corpus petitions pursuant to 28 U.S.C.

§ 2254.  28 U.S.C. § 2244(d)(1).  The one-year limitation period "run[s] from the latest of" one of

four dates:

> (A) the date on which the judgment became final by the conclusion of direct review
> or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action
> in violation of the Constitution or laws of the United States is removed, if the
> applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by
> the Supreme Court, if the right has been newly recognized by the Supreme Court
> and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could
> have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  Regardless of which provision governs the commencement date for the

petitioner's one-year limitation period, the limitation period is tolled for "[t]he time during which

a properly filed application for State post-conviction or other collateral review with respect to the

pertinent judgment or claim is pending." *Id.* § 2244(d)(2).  An application for postconviction relief

or other collateral review is "properly filed," for purposes of statutory tolling, "when its delivery

and acceptance are in compliance with the applicable [state] laws and rules governing filings."

*Artuz v. Bennett*, 531 U.S. 4, 8 (2000).  And an application for postconviction relief or other

collateral review has a tolling effect only if it is filed within the one-year limitation period.  *Clark

v. Oklahoma*, 468 F.3d 711, 714 (10th Cir. 2006).  Because the AEDPA's one-year limitation

period is not jurisdictional, federal courts may, in some circumstances, toll the limitation period

for equitable reasons.  *Holland v. Florida*, 560 U.S. 631, 645 (2010).  In addition, courts may

excuse noncompliance with the statute of limitations if the prisoner makes "a credible showing of

actual innocence." *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013).

Respondent contends the habeas petition is untimely under 28 U.S.C. § 2244(d)(1)(A)

because petitioner did not file the petition within one year of the date his conviction became final,

even with the benefit of statutory tolling under § 2244(d)(2).  Dkt. 9, Resp't's Br., at 3-6.
Respondent further contends petitioner has not shown that his one-year limitation period
commenced at a later date under § 2244(d)(1)(C), or (d)(1)(D), has not demonstrated any
circumstances that would support equitable tolling of the one-year limitation period, and has not
presented a credible actual-innocence claim that would excuse his untimely filing.  *Id.* at 6-13.

## I.     Preliminary matters

Before turning to respondent's arguments in support of dismissal, the Court must consider
whether to grant petitioner's requests (1) for a hearing and oral argument on the dismissal motion
(2) to strike the dismissal motion and (3) to order his immediate release.  For the following reasons,
the Court denies all three requests.

### A.     Motion for hearing

Having reviewed the case materials, the Court finds the dismissal motion can be
adjudicated without a hearing or oral argument.  The Court therefore denies petitioner's motion
for hearing and oral argument (Dkt. 15).

### B.     Motion to strike

The Court has carefully considered petitioner's arguments in support of his motion to strike
the dismissal motion and agrees with respondent that these arguments simply supplement
petitioner's arguments in his response to the dismissal motion.  Dkt. 20, Mot. to Strike, at 1-2; Dkt.
21, Resp. to Mot. to Strike, at 2.  The Court will consider petitioner's supplemental arguments in
adjudicating the dismissal motion.  However, petitioner's request to strike the dismissal motion is
not well-taken.  The Court therefore denies the motion to strike the dismissal motion (Dkt. 20).

### C.     Request for immediate release

Within his motion to strike the dismissal motion, petitioner includes a request for an order

granting his habeas petition and directing his immediate release from state custody in light of the U.S. Supreme Court's decision in *McGirt v. Oklahoma*, 140 S. Ct. 2452 (July 9, 2020). Dkt. 20, Mot. to Strike, at 1-3. For two reasons, the Court denies that request.

First, in light of respondent's dismissal motion, this request is premature. A federal court may grant habeas relief to a state prisoner only if the prisoner is being held in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Petitioner asserts, in part, that his custody is unlawful because the trial court lacked jurisdiction over his criminal prosecution because he and his victims are members of the Cherokee Nation and he committed his crimes within the boundaries of the Cherokee Nation Reservation. Dkt. 1, Pet., at 9-17. This claim, which implicates petitioner's constitutional right to due process, is cognizable on habeas review. *Yellowbear v. Wyo. Atty. Gen.*, 525 F.3d 921, 924 (10th Cir. 2008). However, as just discussed, the AEDPA imposes a one-year statute of limitations for state prisoners seeking federal habeas relief under § 2254. The statute of limitations is not jurisdictional; rather, it is an affirmative defense that may be waived or forfeited. *Holland*, 560 U.S. at 645. But here respondent has neither waived nor forfeited this defense. Instead, respondent timely asserted it and seeks dismissal of the petition. And petitioner's assertion that issues of jurisdiction "should never be subject to procedural bar," Dkt. 1, Pet., at 13, is simply incorrect. *See Murrell v. Crow*, 793 F. App'x 675, 678-79 (10th Cir. 2019) (unpublished) (characterizing habeas petitioner's claim that the trial court lacked jurisdiction to accept his plea as a "due-process claim" and affirming district court's determination that the due-process claim could be dismissed as untimely under § 2244(d)(1)); *Morales v. Jones*, 417 F. App'x 746, 749 (10th Cir. 2011) (unpublished) (finding no legal support for habeas petitioner's assertion that "subject matter jurisdiction can never be waived and therefore [the petitioner] can never be barred from raising" a claim that the trial court

lacked subject-matter jurisdiction and stating, "[a]s with any other habeas claim, [a claim that the trial court lacked subject-matter jurisdiction] is subject to dismissal for untimeliness").[3]  As a result, the Court must decide the threshold question of whether the petition is timely before it can decide whether petitioner is entitled to federal habeas relief, i.e., release from state custody, on the merits of any of his habeas claims.

Second, to the extent petitioner contends the Supreme Court's decision in *McGirt* supports his request for immediate release, he is mistaken.  As respondent contends, "[p]etitioner's conviction was not somehow automatically vacated by *McGirt*."  Dkt. 21, Resp. to Mot. to Strike, at 2 n.1.  In *McGirt*, the Supreme Court held that Oklahoma lacked jurisdiction to prosecute the criminal defendant in that case because the defendant was Native American and he committed his crime within the boundaries of the Muscogee Creek Nation Reservation, a reservation that the *McGirt* Court determined was "Indian country" for purposes of the Major Crimes Act, 18 U.S.C. § 1153(a), because Congress never disestablished the reservation.  *McGirt*, 140 S. Ct. at 2459-60, 2474.  But *McGirt* said nothing about whether major crimes committed within the boundaries of the Cherokee Nation Reservation must be prosecuted in federal court.  *See id.* at 2479 ("Each tribe's treaties must be considered on their own terms, and the only question before us concerns the Creek.").

For these reasons, the Court denies that portion of petitioner's motion to strike that requests his immediate release from state custody.

### D.   Conclusion

With these preliminary matters resolved, the Court turns to respondent's contention that

---

[3] The Court cites these unpublished decisions, and all other unpublished decisions herein, as persuasive authority.  *See* Fed. R. App. P. 32.1(A); 10th Cir. 32.1(a).

the petition should be dismissed as barred by the AEDPA's statute of limitations.

## II.    Dismissal motion

As previously stated, respondent contends the habeas petition is untimely under 28 U.S.C. § 2244(d)(1)(A) because petitioner did not file the petition within one year of the date his conviction became final, even with the benefit of statutory tolling under § 2244(d)(2). Dkt. 9, Resp't's Br., at 3-6. Respondent further contends petitioner has not shown that his one-year limitation period commenced at a later date under § 2244(d)(1)(C), or (d)(1)(D), has not demonstrated any circumstances that would support equitable tolling of the one-year limitation period, and has not presented a credible actual-innocence claim that would excuse his untimely filing. *Id.* at 6-13.

### A.    The petition is untimely under 28 U.S.C. § 2244(d)(1)(A).

Petitioner asserts that his petition is timely under § 2244(d)(1)(A) either (1) because he filed it within one year of the OCCA's January 30, 2019 order affirming the denial of postconviction relief, (2) because his one-year limitation period did not commence until February 14, 2019, or (3) because he filed it only 30 days after the limitation period under § 2244(d)(1)(A) expired. Dkt. 1, Pet., at 26; Dkt. 14, Pet'r's Resp., at 9-10. None of these assertions persuades the Court that the petition is timely under § 2244(d)(1)(A).

Under § 2244(a)(1)(A), a state prisoner has one year from "the date on which [his] judgment became final by the conclusion of direct review or the expiration of the time for seeking [direct] review." Applying the correct commencement date and giving petitioner every benefit of statutory tolling, the petition is untimely under § 2244(d)(1)(A). Because petitioner's convictions rest on guilty pleas, his only path to direct review under Oklahoma law was through a certiorari appeal. *Clayton v. Jones*, 700 F.3d 435, 441 (10th Cir. 2012). Petitioner therefore had 10 days

10

from the date of his sentencing hearing to file a motion to withdraw his pleas and request an evidentiary hearing if he intended to pursue an appeal. *Id.* at 441 (noting that an "application to withdraw guilty plea and the evidentiary hearing are both necessary and critical steps in securing [a certiorari] appeal" (quoting *Randall v. State*, 861 P.2d 314, 316 (Okla. Crim. App. 1993)); Okla. Stat. tit. 22, § 1051; Rule 4.2(A), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2019) (providing criminal defendant convicted on guilty plea must move to withdraw guilty plea within 10 days of sentencing if defendant intends to appeal). Because the trial court sentenced petitioner on January 11, 2016, and petitioner did not move to withdraw his pleas before the 10-day period expired, his convictions became final on January 21, 2016. Petitioner's one-year limitation period for filing a timely federal habeas petition commenced the next day, January 22, 2016, and, absent any tolling events, would have expired on January 22, 2017. *See Harris v. Dinwiddie*, 642 F.3d 902, 906 n.6 (10th Cir. 2011) (discussing calculation of one-year limitation period).

Petitioner filed a motion for judicial review and two applications for postconviction relief, creating three periods of statutory tolling under § 2244(d)(2). As just stated, the one-year limitation period commenced on January 22, 2016, and ran for 210 days, until petitioner filed his motion for judicial review. The limitation period was then tolled from August 19, 2016, to October 3, 2017, while petitioner's motion for judicial review was pending. His one-year limitation period began to run again on October 4, 2017, and 86 days passed before petitioner filed his first application for postconviction relief on December 29, 2017. The second tolling period therefore commenced on December 29, 2017, and ended on May 10, 2018, when the time expired for petitioner to perfect a timely appeal from the state district court's April 10, 2018 order denying his

first application for postconviction relief.[4]  The one-year limitation period then ran for 35 days, from May 11, 2018, until June 15, 2018, when petitioner commenced the third tolling period by filing his second application for postconviction relief, seeking an out-of-time postconviction appeal.  The third tolling period ended on January 30, 2019, when the OCCA affirmed the state district court's order denying petitioner's first application for postconviction relief.[5]  The limitation period began to run again the next day and, at that point, petitioner had 34 days,[6] or until March 6, 2019, to file a timely federal habeas petition.  Petitioner did not file the instant habeas petition until December 24, 2019, over nine months after the one-year limitation period expired.

Thus, even with the benefit of statutory tolling, the petition is untimely under § 2244(d)(1)(A).

**B.      28 U.S.C. § 2244(d)(1)(C) does not apply.**

Petitioner appears to contend that the first and second claims he asserts in his petition, alleging the trial court lacked subject-matter jurisdiction ("jurisdictional claim") and trial counsel

---

[4] As previously discussed, the OCCA dismissed petitioner's appeal from the denial of his first application for postconviction relief on June 29, 2018, because he failed to comply with the OCCA's procedural rules.  Dkt. 9-4, at 3.  As respondent contends, because petitioner failed to comply with the OCCA's procedural rules for perfecting a postconviction appeal, the appeal was not "properly filed" for purposes of § 2244(d)(2).  Dkt. 9, Resp't's Br., at 5; *Artuz*, 531 U.S. at 8.  Thus, petitioner is entitled to statutory tolling only for the 30 days following the denial of his application for postconviction relief.  *See Gibson v. Klinger*, 232 F.3d 799, 804 (10th Cir. 2000) (holding that "regardless of whether a petitioner actually appeals the denial of a post-conviction application, the limitations period is tolled during the period in which the petitioner *could have* sought an appeal under state law" (emphasis in original)).

[5] Petitioner correctly identifies the date of the OCCA's decision in his petition, but misidentifies the date of the OCCA order as February 13, 2019, in his response to the dismissal motion.  Dkt. 1, Pet., at 4, 19, 26; Dkt. 14, Pet'r's Resp., at 3, 9.  The OCCA's decision clearly reflects it was filed on January 30, 2019.  Dkt. 9-6, OCCA Order, at 1.

[6] Before the third tolling period ended on January 30, 2019, petitioner's one-year limitation period ran for 210 days, 86 days, and 35 days, or a total of 331 days, leaving him with 34 days to file a timely federal habeas petition.

provided ineffective assistance ("IAC claim"), are timely under § 2244(d)(1)(C).   Under that provision, the AEDPA's one-year limitation period begins on "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if [1] the right has been newly recognized by the Supreme Court and [2] made retroactively applicable to cases on collateral review."

Petitioner contends that his IAC claim is timely under § 2244(d)(1)(C) because "[t]he Supreme Court has long recognized a defendant['s] right to effective assistance of counsel." Dkt. 14, Pet'r' Resp., at 4.  For support, petitioner points to the Supreme Court's decisions in *Strickland v. Washington*, 466 U.S. 668 (1984), *Gideon v. Wainwright*, 372 U.S. 335 (1963), and *United States v. Cronic*, 466 U.S. 648 (1984).   Dkt. 14, Pet'r' Resp., at 4.  Petitioner's reliance on these cases demonstrates precisely why § 2244(d)(1)(C) does not apply to his IAC claim.  The plain language of that provision requires a state prisoner to file the federal habeas petition within one year of the "date on which the constitutional right asserted was initially recognized by the Supreme Court."  Because the Supreme Court recognized several decades ago that criminal defendants have a Sixth Amendment right to the effective assistance of counsel, § 2244(d)(1)(C) does not apply to petitioner's IAC claim.

Petitioner contends his jurisdictional claim is timely under § 2244(d)(1)(C) because the Supreme Court's ruling in *McGirt* "enforces the Tribal Nations right to self-government and that the state court does not have jurisdiction to try a case before its court, when the alleged is a recognized registered Native American and the crime has occurred on Tribal Land." Dkt. 20, Mot. to Strike, at 1-2.  Thus, petitioner claims, under § 2244(d)(1)(C) and *McGirt* he has until July 10, 2021—or one year from the date of the *McGirt* ruling—to seek federal habeas relief on his jurisdictional claim.  *Id.*  This contention rests on a misreading of *McGirt* and a misunderstanding

13

of § 2244(d)(1)(C).  First, petitioner's reading of *McGirt* is overly broad.  As previously discussed, the *McGirt* Court determined that because Congress did not disestablish the Muscogee Creek Nation Reservation, the land within the boundaries of that reservation is "Indian country," as defined in 18 U.S.C. § 1151(a), and Native Americans who commit major crimes, as defined in 18 U.S.C. § 1153(a), within the boundaries of the Muscogee Creek Nation Reservation are subject to prosecution in federal court rather than state court.  *McGirt*, 140 S. Ct. at 2459-60, 2474-76.  And, as respondent contends, "*McGirt* expressly limited its analysis and holding to the Muscogee Creek Reservation."  Dkt. 21, Resp. to Mot. to Strike, at 2 n.1; *see McGirt*, 140 S. Ct. at 2479 ("Each tribe's treaties must be considered on their own terms, and the only question before us concerns the Creek.").  Thus, contrary to petitioner's assertion, *McGirt* did not hold that the Cherokee Nation Reservation, where petitioner states he committed his crimes, is Indian country within the meaning of the Major Crimes Act, 18 U.S.C. § 1153(a).  Second, even if *McGirt* could be read as broadly as petitioner appears to read it, the *McGirt* Court did not recognize any new constitutional rights when it determined that Congress did not disestablish the Muscogee Creek Nation Reservation. *See McGirt*, 140 S. Ct. at 2459 ("Today we are asked whether the land these treaties promised [to the Creek Nation] remains an Indian reservation for purposes of federal criminal law."); *id.* at 2462-63 (drawing principles for disestablishment analysis from several Supreme Court cases). Because the *McGirt* ruling did not recognize any new constitutional right relevant to petitioner's jurisdictional claim, § 2244(d)(1)(C) does not apply to that claim.

**C.      Even if 28 U.S.C. § 2244(d)(1)(D) applies, the IAC claim is untimely.**

Though his argument is not entirely clear, petitioner appears to contend his IAC claim is timely under § 2244(d)(1)(D).  Under § 2244(d)(1)(D), the one-year limitation period commences on "the date on which the factual predicate of the claim or claims presented could have been

discovered through the exercise of due diligence."

As the Court understands petitioner's argument, he did not know that Logan, his trial counsel, performed deficiently and prejudicially in advising petitioner to enter a guilty plea until petitioner "discovered" the DHS report in July 2017 and discovered that Logan had obtained the DHS report in 2014.  Dkt. 1, Pet., at 18-23; Dkt. 14, Pet'r's Resp., at 7-9; Dkt. 20, Mot. to Strike, at 2.  Petitioner contends that because Logan obtained the DHS report in 2014 but never shared it with him, petitioner did not "realize he had a significant defense to the charges" until he discovered the DHS report in July 2017.  Dkt. 1, Pet., at 20-22.

For two reasons, the Court finds petitioner's reliance on § 2244(d)(1)(D) is misplaced. First, the state district court rejected petitioner's claim that Logan performed deficiently with respect to disclosing or advising him about the DHS report.  Dkt. 9-2, Dist. Ct. Order, at 3-4.  In doing so, the state district court found that petitioner "participated in the investigation and certainly was aware back in 2010, that the report had been generated and that no wrongdoing had been found and no action was taken" and that petitioner "certainly knew of any impeachment evidence in the form of previous denials by his daughters prior to charges even being filed in [the criminal] case." *Id.* at 3.  The state district court further found there was "no question that the 2010 DHS report was turned over to the Defense nearly two years before the pleas by the [petitioner], and the [petitioner] would have personally known of the evidentiary contents of the report regardless of its being turned over." *Id.*  These findings undermine petitioner's claim that he could not have discovered, before July 2017, that Logan was ineffective for advising petitioner to plead guilty despite his daughters' earlier denials regarding the sexual abuse allegations.  And petitioner has not presented any clear and convincing evidence to rebut the presumption that these factual

findings are correct.[7]  28 U.S.C. § 2254(e)(1).

Second, even accepting petitioner's argument that he could not have discovered the factual predicate for his IAC claim until July 2017, that claim remains untimely under § 2244(d)(1)(D). Assuming petitioner first saw the DHS report on July 31, 2017, the one-year limitation period would have been immediately tolled because petitioner's motion for judicial review was pending at that time.  His one-year limitation period, under § 2244(d)(1)(D), would have commenced on October 4, 2017, the day after the state district court denied the motion for judicial review, and would have run for 86 days until petitioner filed his first application for postconviction relief on December 29, 2017.  That tolling period would have ended on May 10, 2018, when the time expired for petitioner to perfect a timely postconviction appeal from the state district court's April 10, 2018 order denying his first application for postconviction relief.  The one-year limitation period then would have run for 35 days, from May 11, 2018, to June 15, 2018, when petitioner filed his second application seeking a postconviction appeal out of time.  The second application was pending until January 30, 2019.  Thus, when the one-year limitation period began to run again, on January 31, 2019, petitioner had 244 days,[8] or until October 2, 2019, to file a timely IAC claim. Petitioner did not file the instant petition until December 24, 2019, more than two months after his

---

[7] With his habeas petition, petitioner submitted an affidavit averring that he did not see the DHS report until July 2017 and that "[h]ad [he] been advised of this evidence that showed that I was not guilty of any offenses against my daughters I would have never entered a plea of guilty and would have gone to trial."  Dkt. 3, Pet'r's Ex. G, at 29-30.  But petitioner's statements do not contradict the state district court's findings that petitioner would have known, in 2010, that he and his daughters denied the sexual abuse allegations when DHS workers interviewed them, that DHS took no action to remove petitioner's daughters from the home following the investigation, and that petitioner would certainly have personal knowledge of whether he had a significant defense to the charges, regardless of whether he did not see the DHS report until 2017, because he would know whether or not he did, in fact, sexually abuse his daughters.

[8] As of January 31, 2019, the one-year limitation period under § 2244(d)(1)(D) ran for 86 days and 35 days, or a total of 121 days, leaving petitioner with 244 days to file a timely petition asserting the IAC claim.

AEDPA deadline expired.

Based on the foregoing, even if the Court assumes that § 2244(d)(1)(D) applies to petitioner's IAC claim, that claim remains untimely.

### D.   The limitation period should not be tolled for equitable reasons.

Because § 2244(d)(1)'s statute of limitations is not jurisdictional, it "is subject to equitable tolling in appropriate cases." *Holland*, 560 U.S. at 645; *Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008). In addition, a court may apply an equitable exception and excuse the failure to comply with the statute of limitations if the petitioner asserts a credible claim of actual innocence. *Perkins*, 569 U.S. at 392. In either situation, it is the petitioner who bears the burden to show that his or her circumstances warrant equitable tolling or an equitable exception. For the following reasons, the Court agrees with respondent that petitioner has not met that burden.

### 1.   Equitable tolling

To warrant equitable tolling a habeas petitioner must "show specific facts" demonstrating (1) that he diligently pursued his federal claims and (2) that extraordinary circumstances prevented him from filing a timely federal habeas petition. *Yang*, 525 F.3d at 928-29; *see also Pace v. Diguglielmo*, 544 U.S. 408, 418 (2005) (describing diligence and extraordinary circumstances as "two elements" a petitioner must establish to obtain the benefit of equitable tolling).

Petitioner's primary arguments for equitable tolling appear to be (1) that he diligently pursued his IAC claim after he discovered the DHS report in July 2017, (2) that his trial counsel's failure to formally withdraw from his case until September 2017 interfered with his ability to exhaust his claims through state postconviction proceedings, and (3) that his postconviction/habeas counsel misunderstood how to calculate the AEDPA's statute of limitations. Dkt. 14, Pet'r's Resp., at 7-11.

Neither petitioner's alleged diligence nor his particular circumstances support equitable tolling.  The record reflects that petitioner's postconviction/habeas counsel, Johnson, entered his appearance in petitioner's state criminal case on March 14, 2017, that petitioner's mother discovered the DHS report on May 18, 2017, and that petitioner first saw the DHS report in July 2017.  Thus, petitioner was represented by postconviction counsel when he purportedly discovered the factual basis for his IAC claim.  Petitioner first presented his IAC claim and his jurisdictional claim in state court through the application for postconviction relief he filed on December 29, 2017, just a few months after he alleges Logan formally withdrew from his criminal case.  As to these events, it appears petitioner diligently pursued his federal claims.  Further, when petitioner failed to perfect a timely appeal from the denial of his first application for postconviction relief, petitioner quickly sought and obtained leave to file an out-of-time postconviction appeal.

Nevertheless, as respondent contends, petitioner did nothing to advance his federal habeas claims for nearly one year after the OCCA affirmed the denial of his first application for postconviction relief on January 30, 2019.  Dkt. 16, Reply Br., at 2.  During this time, petitioner was represented by Johnson and petitioner's pleadings suggest the only obstacle that prevented him from filing a timely federal habeas petition was Johnson's misunderstanding of the AEDPA's one-year statute of limitations.  *See* Dkt. 1, Pet., at 26 (suggesting the one-year limitation period commenced on January 30, 2019, when the OCCA filed its decision in petitioner's postconviction appeal); Dkt. 14, Pet'r's Resp., at 9 (misidentifying date of OCCA's decision on postconviction appeal as February 13, 2019, and asserting that "the statute of limitation pursuant to the AEDPA began to run on February 14, 2019"); *id.* (asserting that "[i]t is not unreasonable or illogical to state that the Defendant/Petitioner's time on the Writ began the day after the date of the entry of the criminal courts of appeal affirmation of the denial of the Defendant/Petitioner's post-conviction

relief. Thus, the time would run on or about February 14, 2020"); Dkt. 20, Mot. to Strike, at 1-2 (asserting petitioner has one year from the ruling in *McGirt* to file a timely petition asserting his jurisdictional claim).

Unfortunately for petitioner, even when a habeas petitioner appears pro se and misunderstands the applicable statute of limitations, the petitioner's ignorance of the law generally does not support equitable tolling. *See Murrell*, 793 F. App'x, at 679 (noting that "neither a plaintiff's unfamiliarity with the legal process nor . . . lack of representation during the applicable filing period merits equitable tolling" (quoting *Turner v. Johnson*, 177 F.3d 390, 392 (5th Cir. 1999))); *Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998) (concluding that equitable tolling was not warranted even though pro se petitioner "did not know about" the AEDPA's one-year limitation period "until it was too late"). An attorney's misunderstanding of the AEDPA's one-year statute of limitations provides even less support for equitable tolling. *See Pink v. McKune*, 146 F. App'x 264, 267 (10th Cir. 2005) (unpublished) (joining other circuit courts in holding "that attorney error" in interpreting or calculating a statute of limitations "is generally not a basis for equitable tolling"); *Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000) (gathering cases from other circuits and stating, "An attorney's miscalculation of the limitations period or mistake is not a basis for equitable tolling").

On the record presented, the Court therefore finds no basis to support petitioner's request for equitable tolling of the one-year limitation period.

## 2.   Actual innocence

Finally, petitioner describes the DHS report as "exculpatory evidence" that "would have exonerated" him had the report been presented to a jury. Dkt. 1, Pet., at 18-21; Dkt. 14, Pet'r's Resp., at 6-7. To the extent petitioner's arguments could be construed as asserting an "actual-

innocence" claim that could excuse his failure to file a timely petition, the Court agrees with respondent that *Perkins*' equitable exception does not apply.

In *Perkins*, the Supreme Court held that a habeas petitioner may obtain review of untimely federal habeas claims otherwise barred by the one-year statute of limitations if the petitioner presents a "credible" claim of actual innocence. *Perkins*, 569 U.S. at 386, 392. "To make a credible showing of actual innocence, a 'petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."'" *Frost v. Pryor*, 749 F.3d 1212, 1231-32 (10th Cir. 2014) (quoting *Cummings v. Sirmons*, 506 F.3d 1211, 1223 (10th Cir. 2007)). And "the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

Petitioner's reliance on the DHS report to assert his "actual innocence" is misplaced for two reasons. First, even assuming the DHS report would have provided petitioner a "significant defense," petitioner waived his constitutional right to present a defense to the charges by pleading guilty. Petitioner's guilty plea, in and of itself, undermines any assertion of actual innocence. *See, e.g., Johnson v. Medina*, 547 F. App'x 880, 885 (10th Cir. 2013) (unpublished) ("While [the petitioner] claims that his guilty plea was involuntary and coerced, the state courts rejected that argument, and his plea of guilty simply undermines his claim that another individual committed the crime to which he pled guilty."). Second, even assuming the DHS report could be considered new evidence, despite the fact that trial counsel had the report in 2014 and petitioner had personal knowledge that the DHS took no action to remove his daughters from the home after its 2010 investigation, petitioner cannot meet his burden to show "that it is more likely than not that no

reasonable juror would have convicted him in light of the new evidence." *Schlup*, 513 U.S. at 327 (1995).  The state district court's findings reflect that petitioner, his wife, and his daughters denied allegations that petitioner was sexually abusing his daughters when they spoke with DHS workers in 2010.  Dkt. 9-2, Dist. Ct. Order, at 1.  Three years after the DHS investigation, petitioner admitted to his wife that he had, in fact, sexually abused at least one of his daughters.  Dkt. 9-2, Dist. Ct. Order, at 1.  As petitioner appears to acknowledge, the DHS report could have "provided a doubt" as to his guilt by impeaching the credibility of his daughters had they testified at trial. Dkt. 14, Pet'r's Resp., at 6.  But, contrary to petitioner's repeated assertions, the DHS report would not "clearly exonerate[]" him.  Dkt. 1, Pet., at 21.  Evidence that merely casts doubt on a petitioner's guilt by impeaching the credibility of the State's witnesses, is not sufficient to support a credible actual-innocence claim.  *See Schlup*, 513 U.S. at 329 ("The meaning of actual innocence . . . does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty."); *Frost*, 749 F.3d at 1232 ("Simply maintaining one's innocence, or even casting doubt on witness credibility, does not necessarily satisfy [the *Schlup*] standard." *Frost*, 749 F.3d at 1232.

Under the facts of this case, petitioner has not shown that the Court should apply *Perkins'* equitable exception to excuse his failure to comply with the the one-year statute of limitations.

**E.    Conclusion**

In sum, the habeas petition is untimely under 28 U.S.C. § 2244(d)(1)(A) and petitioner has not shown either that his one-year limitation period commenced at a later date under § 2244(d)(1)(C) or that his IAC claim is timely under § 2244(d)(1)(D).  Further, petitioner has neither demonstrated any circumstances that would support equitable tolling of the one-year limitation period nor presented a colorable actual-innocence claim that would excuse his untimely

filing.  The Court therefore grants respondent's dismissal motion.[9]

### *CONCLUSION*

Based on the foregoing, the Court denies petitioner's motion for a hearing and oral argument on the dismissal motion, denies petitioner's motion to strike the dismissal motion, grants respondent's dismissal motion, and dismisses the petition for writ of habeas corpus, with prejudice, as barred by 28 U.S.C. § 2244(d)(1)'s one-year statute of limitations.  In addition, because the Court finds that reasonable jurists would not disagree with its determination that petitioner's claims are time-barred, the Court declines to issue a certificate of appealability.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); 28 U.S.C. § 2253(c); Rule 11, *Rules Governing Section 2254 Cases in the United States District Courts*.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1.      Petitioner's motion for hearing and oral argument (Dkt. 15) is **denied**.

---

[9] On a final note, respondent suggests that a stay of this habeas proceeding might be appropriate "under the unique circumstances of this case while Petitioner exhausts his State court remedies with respect to the recent *McGirt* decision." Dkt. 21, Resp. to Mot. to Strike, at 4, 6. The Court disagrees.  As respondent asserts, this Court recently issued an order in *Bethel v. Crow*, No. 17-CV-0367-GKF-FHM (N.D. Okla. Aug. 4, 2020), granting a habeas petitioner's request to stay a habeas proceeding pending the petitioner's exhaustion of a *McGirt* claim.  Dkt. 21, Resp. to Mot. to Strike, at 4-5; Dkt. 21-2 (*Bethel* order).  But *Bethel* presented a different situation.  In *Bethel*, the petitioner filed a habeas petition presenting several timely and exhausted claims and the petition was ripe for adjudication on the merits of those claims when the petitioner requested a stay to exhaust a new, possibly untimely *McGirt* claim.  The Court reasoned that a stay was appropriate because it would be a waste of judicial resources to adjudicate the timely, exhausted claims if the state court were to vacate the petitioner's challenged state-court judgment on the basis of his new *McGirt* claim.  Here, in contrast, petitioner filed a habeas petition with three exhausted claims, one of which he now appears to be re-exhausting in state court in light of *McGirt*.  But, as respondent has successfully argued, all of petitioner's claims in the instant petition are untimely. Unlike the situation in *Bethel*, the state court's resolution of petitioner's *McGirt* claim does not have the potential to moot his request for federal habeas relief as to any timely, exhausted claims because petitioner's request for federal habeas relief on the claims currently before the Court are procedurally barred by the one-year statute of limitations.  The Court therefore declines respondent's invitation to stay this habeas proceeding and instead grants his motion to dismiss the habeas petition.

2.      Petitioner's motion to strike and request for immediate release (Dkt. 20) is **denied**.

3.      Respondent's motion to dismiss (Dkt. 8) is **granted**.

4.      The petition for writ of habeas corpus (Dkt. 1) is **dismissed with prejudice**.

5.      A certificate of appealability is **denied**.

6.      A separate judgment shall be entered in this matter.

   **DATED** this 22nd day of October 2020.


GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE